HANSON BRIDGETT LLP
ALEXANDER J. BERLINE, SBN 158098
aberline@hansonbridgett.com
SEAN G. HERMAN, SBN 302261
sherman@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

Attorneys for Plaintiff
Kevin Barry Fine Art Associates

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BARRY FINE ART ASSOCIATES, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LIMITED, d/b/a THE HARTFORD,<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF<br><br>Jury Trial Demanded |

Plaintiff KEVIN BARRY FINE ART ASSOCIATES ("KBFA") brings this Complaint against Defendant Sentinel Insurance Co., Ltd. d/b/a The Hartford ("Hartford"), and alleges as follows:

**I.   NATURE OF THE ACTION**

1.   KBFA has three (3) retail locations where it sold art to the public, each of which was forced to close in March 2020 due to COVID-19.

2.   On information and belief, "The Hartford" is a service mark owned by Hartford Fire Insurance Company. Sentinel Insurance Co., Ltd. underwrites insurance policies primarily through Hartford.

3. To protect its business, including its several retail locations, KBFA purchased insurance coverage from Hartford, including special property coverage, as set forth in Hartford's Coverage Form.

4. Hartford's Special Property Coverage Form provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations.

5. Hartford's Special Property Coverage Form also provides "Extra Expense" coverage, which promises to pay the expenses incurred to minimize the suspension of business and to continue operations.

6. Hartford's Special Property Coverage Form also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

7. Hartford's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage," mandates that Hartford's insured "must see that the following are done in the event of loss. . . [t]ake all reasonable steps to protect the Covered Property from further damage," "set the damaged property aside in the best possible order for examination," and "keep a record of your expenses for emergency and temporary repairs for consideration in the settlement of the claim." This type of coverage has historically been known as "sue and labor" coverage or a "sue and labor" provision, and property policies have long provided coverage for these types of expenses.

8. KBFA was forced to shut down its three (3) retail locations due to COVID-19 and the resultant orders, including but not limited to those issued by the Governor of Nevada, the Governor of California, the City of San Francisco, the County of Los Angeles, and the City of Santa Monica. These orders mandated that KBFA suspend its business and take necessary steps to prevent further damage.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

### III. INTRADISTRICT ASSIGNMENT

11. Pursuant to Local Rule 3-2, assignment of this case to the San Francisco Division is proper because the action arises in San Francisco County due to one of KBFA's insured locations being located there.

### IV. THE PARTIES

12. Plaintiff Kevin Barry Fine Art Associates, is a California company which had, at all times relevant to this Complaint, three (3) retail locations in early 2020: San Francisco, California; Santa Monica, California; and Las Vegas, Nevada.

13. Defendant Sentinel Insurance Co., Ltd. d/b/a The Hartford is a Connecticut company with its principal place of business in Hartford, Connecticut. Hartford is authorized to write, sell, and issue insurance policies providing property and business income coverage in California. At all times material hereto, Hartford conducted and transacted business through the selling and issuing of insurance policies within California and Nevada, including, but not limited to, selling and issuing property coverage to KBFA.

### V. FACTUAL BACKGROUND

#### A. The Special Property Coverage Form Protecting KBFA

14. In return for the payment of a premium, Hartford issued Policy No. 72 SBA IA0061 SC to KBFA for a policy period of March 1, 2020, to March 1, 2021, including a Businessowners Special Property Coverage Form. KBFA has performed all of its obligations under Policy No. 72 SBA IA0061 SC, including the payment of premiums. The Covered Property, with respect to the Special Property Coverage Form and as referenced through this Complaint, means KBFA's above described three locations in California and Nevada.

15. KBFA's Special Property Coverage Form includes Business Income, Civil Authority, Extra Expense, and Sue and Labor coverages.

16. In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1). Most property policies sold in the United States, however, including those sold by Hartford, are all-risk property damage policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. In the Special Property Coverage Form provided to KBFA, under the heading "Covered Causes of Loss," Hartford agreed to pay for all risk of direct physical loss unless the loss is excluded or limited by the Special Property Coverage Form.

17. In the Special Property Coverage Form, Hartford did not exclude or limit coverage for losses from viruses.

18. The Special Property Coverage Form is modified by an endorsement, Form SS 40 93 07 05 (the "Virus Endorsement"), which expressly provides coverage for losses caused by fungi, bacteria, or viruses.

19. The Virus Endorsement requires KBFA to use "all reasonable means . . . to save and preserve the property from further damage at the time of and after that occurrence."

20. Losses due to COVID-19 are a Covered Cause of Loss under Hartford's insurance policies with the Special Property Coverage Form.

21. Losses due to COVID-19 are covered by the Virus Endorsement.

22. Any reading of the Special Property Coverage Form and the Endorsement that does not provide coverage for losses due to COVID-19 would render Policy No. 72 SBA IA0061 SC an illusory contract.

23. "Business Income" means the net income (or loss) before tax that KBFA would have earned if no physical loss or damage had occurred.

24. In the Special Property Coverage Form, Hartford agreed to pay for KBFA's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "partial slowdown or complete cessation" of business activities at the Covered Property is

a "suspension" under the policy, for which Hartford agreed to pay for loss of Business Income during the "period of restoration" that occurs within twelve (12) consecutive months after the date of direct physical loss or damage.

25. The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, Insurance Services Office ("ISO"), circulated a statement to state insurance regulators that included the following: "Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses….Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case."

26. "Extra Expense" means expenses "to avoid or minimize the 'suspension' of business and to continue 'operations,'" and to repair or replace property.

27. In the Special Property Coverage Form, Hartford also agreed to pay necessary Extra Expense that KBFA incurs during the "period of restoration" that KBFA would not have incurred if there had been no direct physical loss or damage to the Covered Property.

28. Hartford also agreed to pay for "the actual loss of Business Income" that KBFA sustains and any Extra Expense caused by action of civil authority that prohibits access to the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property and the civil authority prohibits access to the property and its surrounding area and takes such action in response to dangerous

physical conditions.

29. Hartford's Special Property Coverage Form, under a section entitled "Duties in the Event of Loss or Damage," mandates that Hartford's insured "must see that the following are done in the event of loss...[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." This type of coverage has historically been known as "sue and labor" coverage or a "sue and labor" provision, and property policies have long provided coverage for these types of expenses.

30. Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, Civil Authority, and Sue and Labor provisions of the Hartford policy.

### B. The Covered Cause of Loss

31. The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over KBFA's businesses (collectively the "Closure Orders").

32. On March 4, 2020, California Governor Gavin Newsom issued a "Proclamation of a State of Emergency."

33. On March 16, 2020, the San Francisco City & County Public Health Department issued a shelter-in-place order, which required that "[a]ll businesses with a facility in the County, except Essential Businesses…, are required to cease all activities at facilities located within the County except Minimum Basic Operations…."

34. On March 19, 2020, Governor Newsom issued Executive Order N-33-20, which he found was necessary "for the preservation of public health and safety throughout the entire State of California."

35. Governor Newsom's March 19th Order requires "all individuals living in the State of California to stay home or at their place of residence except as needed to

maintain continuity of operations of the federal critical infrastructure sectors." The Closure Order remains in effect until further notice.

36. Also on March 19, 2020, the County of Los Angeles issued a shelter-in-place order, which forced all non-essential businesses like KBFA's to cease operations.

37. On March 20, 2020, the State of Nevada ordered all non-essential businesses that promote social gathering to close effective March 20, 2020, until April 16, 2020.

38. On March 31, 2020, the San Francisco City & County Public Health Department extended its March 16th Order to expire on May 3, 2020.

39. Also on March 31, 2020, the State of Nevada extended its March 20th Order to expire on April 30, 2020.

40. On April 29, 2020, the San Francisco City & County Public Health Department again extended its Order to expire on May 31, 2020.

41. And on May 22, 2020, the San Francisco City & County Public Health Department extended its Order indefinitely.

42. On June 1, 2020, the County of Los Angeles withdrew its March 19th Order and replaced it with another Order requiring that all non-essential businesses cease operations. This Order has no expiration date.

43. Violations of these orders are punishable by fine, imprisonment, or both.

**C.    The Impact of COVID-19 and the Closure Orders**

44. The presence of COVID-19 caused "direct physical loss of or damage to" each "Covered Property" under Hartford's policy by denying use of and damaging the Covered Property and by causing a necessary suspension of operations during a period of restoration.

45. The Closure Orders prohibited access to KBFA's Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

46. On or about April 14, 2020, the California Department of Insurance issued a

Notice requiring insurance companies to comply with their contractual, statutory, regulatory, and other legal obligations and fairly investigate all business interruption claims caused by COVID-19.

47. Hartford failed to investigate KBFA's claim, including not inspecting the Covered Property and/or surrounding areas after KBFA tendered its claim for coverage.

48. As a result of the presence of COVID-19 and the Closure Orders, KBFA lost Business Income and incurred Extra Expense.

49. On or about April 2, 2020, KBFA submitted a claim of loss to Hartford under KBFA's policy.

50. On or about April 3, 2020, Hartford denied KBFA's claims.

51. Hartford has, on a wide scale basis with many if not all of its insureds, refused to provide Business Income, Extra Expense, Civil Authority, and Sue and Labor coverage due to COVID-19 and the resultant executive orders by civil authorities that have required the suspension of business.

## VI. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### (Breach of Contract – Business Income Coverage)

52. KBFA repeats and realleges Paragraphs 1–51 as if fully set forth herein.

53. KBFA's policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's losses for claims covered by the policy.

54. In the Special Property Coverage Form, Hartford agreed to pay for KBFA's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

55. A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Hartford agreed to pay for loss of Business Income during the "period of restoration" "that occurs within 12 consecutive months after the date of direct physical loss or damage."

56. "Business Income" means net income (or loss) before tax that KBFA would have earned "if no physical loss or damage had occurred."

57. COVID-19 caused direct physical loss and damage to KBFA's Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of KBFA's Hartford policy.

58. KBFA has complied with all applicable provisions of its policy and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms.

59. By denying coverage for any Business Income losses incurred by KBFA in connection with the COVID-19 pandemic, Hartford has breached its coverage obligations under the policy.

60. As a result of Hartford's breaches of the policy, KBFA has sustained substantial damages for which KBFA is liable in an amount to be established at trial.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Civil Authority Coverage)

61. KBFA repeats and realleges Paragraphs 1–60 as if fully set forth herein.

62. KBFA's policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's losses for claims covered by the policy.

63. Hartford promised to "pay for the actual loss of Business Income" sustained "and any Extra Expense caused by action of civil authority that prohibit access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property and the civil authority takes its action "in response to dangerous physical conditions."

64. The Closure Orders triggered the Civil Authority provision under KBFA's Hartford insurance policy.

65. KBFA has complied with all applicable provisions of the policy, and/or those

provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms.

66. By denying coverage for any business losses incurred by KBFA in connection with the Closure Orders and the COVID-19 pandemic, Hartford has breached its coverage obligations under the policy.

67. As a result of Hartford's breaches of the policy, KBFA has sustained substantial damages for which Hartford is liable in an amount to be established at trial.

## THIRD CAUSE OF ACTION

### (Breach of Contract – Extra Expenses Coverage)

68. KBFA repeats and realleges Paragraphs 1–67 as if fully set forth herein.

69. KBFA's insurance policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA for claims covered by the policy.

70. In the Special Property Coverage Form, Hartford agreed to pay necessary Extra Expense that KBFA incurred during the "period of restoration" that KBFA would not have incurred if there had been no direct physical loss or damage to the Covered Property.

71. "Extra Expense" means expenses "to avoid or minimize the suspension of business and to continue 'operations,'" and also includes expenses "to repair or replace property."

72. Due to COVID-19 and the Closure Orders, KBFA incurred Extra Expense at Covered Property.

73. KBFA has complied with all applicable provisions of the policy and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms.

74. By denying coverage for any business losses incurred by KBFA in

connection with the Closure Orders and the COVID-19 pandemic, Hartford has breached its coverage obligations under the policy.

75. As a result of Hartford's breaches of the policy, KBFA has sustained substantial damages for which Hartford is liable in an amount to be established at trial.

## FOURTH CAUSE OF ACTION

### (Breach of Contract – Sue and Labor Coverage)

76. KBFA repeats and realleges Paragraphs 1–75 as if fully set forth herein.

77. KBFA's policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's losses for claims covered by the policy.

78. In the Special Property Coverage Form, Hartford agreed to give due consideration in settlement of a claim to expenses incurred in taking all reasonable steps to protect Covered Property from further damage.

79. In complying with the Closure Orders and otherwise suspending or limiting operations, KBFA incurred expenses in connection with reasonable steps to protect Covered Property.

80. KBFA has complied with all applicable provisions of the policy and/or those provisions have been waived by Hartford, or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms.

81. By denying coverage for any Sue and Labor expenses incurred by KBFA in connection with the Closure Orders and the COVID-19 pandemic, Hartford has breached its coverage obligations under the policy.

82. As a result of Hartford's breaches of the policy, KBFA has sustained substantial damages for which Hartford is liable in an amount to be established at trial.

## FIFTH CAUSE OF ACTION

### (Breach of Contract – Virus Endorsement)

83. KBFA repeats and realleges Paragraphs 1–82 as if fully set forth herein.

84. KBFA's policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's losses for claims covered by the policy.

85. In the Virus Endorsement, Hartford agreed to pay for KBFA's Business Income and Extra Expense losses to the Covered Properties.

86. COVID-19 caused direct physical loss and damage to KBFA's Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Virus Endorsement provision of KBFA's policy with Hartford.

87. KBFA has complied with all applicable provisions of the policy, and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms.

88. By denying coverage for any business losses incurred by KBFA in connection with the COVID-19 pandemic, Hartford has breached its coverage obligations under the policy.

89. As a result of Hartford's breaches of the policy, KBFA has sustained substantial damages for which Hartford is liable in an amount to be established at trial.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment – Business Income Coverage)

90. KBFA repeats and realleges Paragraphs 1–89 as if fully set forth herein.

91. KBFA's policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's losses for claims covered by the policy.

92. KBFA has complied with all applicable provisions of the policy and/or those

provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which KBFA is entitled.

93. An actual case or controversy exists regarding KBFA's rights and Hartford's obligations under the policy to reimburse KBFA for the full amount of Business Income losses incurred by KBFA in connection with suspension of its businesses stemming from the COVID-19 pandemic.

94. Pursuant to 28 U.S.C. § 2201, KBFA seeks a declaratory judgment from this Court declaring the following:

    a. KBFA's Business Income losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under its policy; and

    b. Hartford is obligated to pay KBFA for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment – Civil Authority Coverage)

95. KBFA repeats and realleges Paragraphs 1–94 as if fully set forth herein.

96. KBFA's policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's losses for claims covered by the policy.

97. KBFA has complied with all applicable provisions of the policy and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which KBFA is entitled.

98. An actual case or controversy exists regarding KBFA's rights and Hartford's obligations under the policy to reimburse KBFA for the full amount of covered Civil Authority losses incurred by KBFA in connection with Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

99. Pursuant to 28 U.S.C. § 2201, KBFA seeks a declaratory judgment from this Court declaring the following:

    a. KBFA's Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under its policy; and

    b. Hartford is obligated to pay KBFA the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

## EIGHTH CAUSE OF ACTION

## (Declaratory Judgment – Extra Expense Coverage)

100. KBFA repeats and realleges Paragraphs 1–99 as if fully set forth herein.

101. KBFA's insurance policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's losses for claims covered by the policy.

102. KBFA has complied with all applicable provisions of the policy and/or those provisions have been waived by Hartford or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which KBFA is entitled.

103. An actual case or controversy exists regarding KBFA's rights and Hartford's obligations under the policy to reimburse KBFA for the full amount of Extra Expense losses incurred by KBFA in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

104. Pursuant to 28 U.S.C. § 2201, KBFA seeks a declaratory judgment from this Court declaring the following:

    a. KBFA's Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under its policy; and

    b. Hartford is obligated to pay KBFA for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

## NINTH CAUSE OF ACTION

**(Declaratory Judgment – Sue and Labor Coverage)**

105. KBFA repeats and realleges Paragraphs 1–104 as if fully set forth herein.

106. KBFA's insurance policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA's reasonably incurred expenses to protect Covered Property.

107. KBFA has complied with all applicable provisions of the policy and/or those provisions have been waived by Hartford, or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which KBFA is entitled.

108. An actual case or controversy exists regarding KBFA's rights and Hartford's obligations under the policy to reimburse KBFA for the full amount KBFA reasonably incurred to protect Covered Property from further damage by COVID-19.

109. Pursuant to 28 U.S.C. § 2201, KBFA seeks a declaratory judgment from this Court declaring the following:

    a. KBFA reasonably incurred expenses to protect Covered Property from further damage by COVID-19 are insured losses under its policy; and

    b. Hartford is obligated to pay KBFA for the full amount of the expenses

it reasonably incurred to protect Covered Property from further damage by COVID-19.

## TENTH CAUSE OF ACTION

### (Declaratory Judgment – Virus Endorsement Coverage)

110.   KBFA repeats and realleges Paragraphs 1–109 as if fully set forth herein.

111.   KBFA's insurance policy with Hartford is a contract under which Hartford was paid premiums in exchange for its promise to pay KBFA for claims covered by the policy.

112.   KBFA has complied with all applicable provisions of the policy and/or those provisions have been waived by Hartford, or Hartford is estopped from asserting them, and yet Hartford has abrogated its insurance coverage obligations pursuant to the policy's clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which KBFA is entitled.

113.   An actual case or controversy exists regarding KBFA's rights and Hartford's obligations under the policy to reimburse KBFA for the full amount of Business Income and Extra Expense losses incurred by KBFA in connection with suspension of its businesses stemming from the COVID-19 pandemic.

114.   Pursuant to 28 U.S.C. § 2201, KBFA seeks a declaratory judgment from this Court declaring the following:

   a.   KBFA's Business Income and Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under the Virus Endorsement to its policy; and

   b.   Hartford is obligated to pay KBFA for the full amount of Business Income and Extra Expense losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

## ELEVENTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

115.   KBFA repeats and realleges Paragraphs 1–114 as if fully set forth herein.

116.   KBFA's insurance policy contains an implied covenant of good faith and fair dealing under which Hartford agreed not to take any action that would deprive KBFA of its rights and benefits under the policy.

117.   Moreover, on or about April 14, 2020, the California Department of Insurance issued a Notice requiring insurance companies to comply with their contractual, statutory, regulatory, and other legal obligations and fairly investigate all business interruption claims caused by COVID-19.

118.   Hartford, however, failed to investigate KBFA's claim, including not inspecting the Covered Property and/or surrounding areas after KBFA tendered its claim for coverage.

119.   Hartford breached the implied covenant of good faith and fair dealing by engaging in a course of conduct intentionally designed to deprive KBFA of its rights and benefits under the policy.

120.   Hartford breached the implied covenant of good faith and fair dealing by asserting unreasonable interpretations of the policy with the intention of depriving KBFA of rights and benefits due to KBFA under the policy. Hartford's breaches of the implied covenant of good faith and fair dealing include, but are not limited to, intentionally, wrongfully, and maliciously:

    a.   Failing to honor its obligation to promptly pay KBFA's expenses, including defense expenses;

    b.   Basing its claims-handling decisions on the desire to reduce or avoid its obligations to KBFA;

    c.   Preferring its own interests over the interests of KBFA;

    d.   Denying KBFA the rights and benefits to which KBFA is entitled under the policy, with the intention of coercing KBFA to forgo these

      rights and benefits; and

  e. Taking coverage positions contrary to controlling law.

121. By breaching the implied covenant of good faith and fair dealing, Hartford waived its rights under the policy.

122. As a direct and proximate result of Hartford's breaches of the implied covenant of good faith and fair dealing, KBFA has been damaged in an amount to be proven at trial.

123. As a direct and proximate cause of Hartford's breaches of the implied covenant of good faith and fair dealing, KBFA is entitled to recover its attorneys' fees and costs incurred in establishing its rights to obtain benefits under the policy.

## VII. REQUEST FOR RELIEF

WHEREFORE, KBFA respectfully requests that the Court enter judgment in its favor and against Hartford as follows:

1. Entering judgment in favor of KBFA and awarding damages for breach of contract in an amount to be determined at trial;

2. Entering declaratory judgment in favor of KBFA as follows:

  a. Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under its policy; and

  b. Hartford is obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Sue and Labor losses incurred and to be incurred that are related to COVID-19, the Closure Orders, and the necessary interruption of KBFA's businesses stemming from the COVID-19 pandemic;

  c. Ordering Hartford to pay both pre- and post-judgment interest on any amounts;

  d. Ordering Hartford to pay attorneys' fees and costs of suit; and

e. Ordering such other and further relief as may be just and proper.

**JURY TRIAL DEMAND**

KBFA hereby demands trial by jury of any and all issues so triable.

DATED:  July 16, 2020                                HANSON BRIDGETT LLP

By: _____
ALEXANDER J. BERLINE
SEAN G. HERMAN
Attorneys for Plaintiff
Kevin Barry Fine Art Associates, a California Corporation