1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    KEVIN BARRY FINE ART
     ASSOCIATES,                              Case No.  20-cv-04783-SK
8
                    Plaintiff,
9                                             **ORDER GRANTING MOTION FOR**
            v.                                **JUDGMENT ON THE PLEADINGS**
10
     SENTINEL INSURANCE COMPANY,              Regarding Docket Nos. 31, 32, 36, 38
     LIMITED,
11
                    Defendant.
12
            This matter comes before the Court upon consideration of the motion judgment on the
13
     pleadings filed by Sentinel Insurance Company Limited doing business as the Hartford
14
     ("Sentinel").  The Court determines that the motion is appropriate for disposition without oral
15
     argument and, thus, is deemed submitted.  *See* Civ. L.R. 7-1(b).  Accordingly, the hearing set for
16
     January 25, 2021 is HEREBY VACATED.  Having carefully considered the parties' papers,
17
     relevant legal authority, and the record in the case, the Court hereby GRANTS Sentinel's motion
18
     for judgment on the pleadings for the reasons set forth below.
19
            The Court also GRANTS Sentinel's requests that the Court take judicial notice of other
20
     court's orders and transcripts pursuant to Fed. R. Evid. 201.  (Dkt. Nos. 32, 38.)  Public records
21
     are proper subjects of judicial notice.  *See*, *e.g.*, *United States v. Black,* 482 F.3d 1035, 1041 (9th
22
     Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the
23
     federal system, if those proceedings have a direct relation to matters at issue.").  KBFA requests
24
     that the Court take judicial notice of a report from San Francisco on COVID-19 data, a press
25
     release by the United States Department of Health and Human Services, Center for Disease
26
     Control and Prevention, a press release by the California Department of Insurance, and a bulletin
27
     published by the Insurance Services Office, Incorporated.  (Dkt. No. 36.)  The Court GRANTS the
28
     request by Kevin Barry Fine Art Associates ("KBFA") to take judicial notice and takes judicial

notice that these statements were issued. *See Lee v. City of Los Angeles,* 250 F.3d 668, 689-90 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.").

## BACKGROUND

KBFA has three retail locations where it sells art to the public – one in San Francisco, one in Santa Monica, and one in Las Vegas.  (Dkt. No. 1, ¶¶ 1, 12.)  KBFA alleges that it was forced to close these three locations in March 2020 due to COVID-19.  (*Id.*)

KBFA alleges that COVID-19 has caused civil authorities across the country to issue orders requiring the suspension of business, including civil authorities with jurisdiction over KBFA's businesses.  (*Id.*, ¶ 31.)  KBFA points to the state of emergency declared by California Governor Gavin Newsom, the shelter-in-place order issued by the San Francisco Public Health Department requiring "[a]ll businesses with a facility in the County, except Essential Businesses… to cease all activities at facilities located within the County except Minimum Basic Operations….", a shelter-in-place order by the County of Los Angeles, and an order by the State of Nevada that all non-essential businesses that promote social gathering to close.  (*Id.*, ¶¶ 32-42.)  The Court will refer to these orders as Stay-at-Home Orders.

KBFA purchased insurance coverage from Sentinel.  (*Id.*, ¶¶ 2, 3.)  The insurance policy at issue, Policy No. 72 SBA IA0061 (the "Policy") for the period March 1, 2020, to March 1, 2021. (*Id.*, ¶ 14.; Dkt. No. 17-1 (the Policy, attached as Exhibit A to Sentinel's Answer).)  The Policy provides, in pertinent part:

### A.  COVERAGE

We will pay for direct physical loss of or physical damage to Covered Property at the premises . . . .

#### 3.  Covered Causes of Loss

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a.  Excluded in Section **B., EXCLUSIONS**; or

b.  Limited in Paragraph **A.4.** Limitations; that follow.

. . .

2

o. **Business Income**

   **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

. . .

q. **Civil Authority**

   **(1)** This insurance is extended to apply to the actual loss of Business Income you sustain when access to  your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

. . .

r. **Extended Business Income**

   **(1)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

   **(a)** Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; . . .

. . .

**12.** "Period of Restoration" means the period of time that:

a. Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and

b. Ends on the date when:

   **(1)** The property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

   **(2)** The date when your business is resumed at a new, permanent location.

. . .

/ / /

3

[Virus Endorsement]

"Fungi", Wet Rot, Dry Rot, Bacteria And Virus [Sentinel] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus . . . .

(Dkt. No. 17-1, pp. 50, 51, 59, 60, 73.)

KBFA filed suit alleging that Sentinel failed to pay its business income due under the Policy. Sentinel brings this motion for judgment on the pleadings, arguing that, based on the language of the policy, there is no coverage for KBFA's business losses.

## ANALYSIS

**A.     Applicable Legal Standard on Motion for Judgment on the Pleadings.**

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the claims asserted in the complaint. A Rule 12(c) motion is "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal 2008). "For purposes of the motion, the allegations of the non-moving party must be accepted as true . . . ." *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Although the standards for evaluating a motion to dismiss and a motion for judgment on the pleadings are similar, a motion for judgment on the pleadings "is proper when the moving party clearly establishes on the face of the pleadings that *no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.*" *Id*. (emphasis added).

**B.     Sentinel's Motion for Judgment on the Pleadings.**

Sentinel argues that the Policy does not cover KBFA's lost income from closing during the pandemic. Under California law, "interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation." *State v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (2012). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU*

United States District Court
Northern District of California

4

*Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990).  "If contractual language is clear and explicit, it governs."  *Bank of the West*, 2 Cal. 4th at 1264.  Courts must interpret coverage clauses "broadly so as to afford the greatest possible protection to the insured" and interpret "exclusionary clauses . . . narrowly against the insurer."  *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 101-02 (1973).  Any doubt must be resolved in the insured's favor.  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993).

**1.    Direct Physical Loss of Property.**

KBFA seeks to recover lost business income under both the Business Income and Extended Business Income provision.  Sentinel argues that KBFA's claims under these provisions fail because the "virus endorsement" noted above precludes coverage and because KBFA has not, and cannot, allege direct physical loss of property from when it closed its art galleries due to the pandemic and the Stay-at-Home Orders.  Because the Court finds that KBFA has not, and cannot, allege direct physical loss of property, it need not address the scope of the "virus endorsement."

Numerous courts have considered whether allegations similar to KBFA's constitute a "direct physical loss of . . . property, and the overwhelming majority have concluded that temporarily closing a business due to government closure orders during the pandemic does not constitute a direct loss of property under insurance policies with the same coverage provision.  *See*, *e.g.*, *10E, LLC v. Travelers Indem. Co. of Connecticut*, --- F. Supp. 3d ---, 2020 WL 5359653, at *4-5 (C.D. Cal. Sept. 2, 2020) ("An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, --- F. Supp. 3d ---, 2020 WL 5500221, *4-5 (S.D. Cal. Sept. 11, 2020) ("*Pappy's I*") ("Most courts have rejected these claims, finding that the government orders did not constitute direct physical loss or damage to property."); *Mudpie, Inc.*, --- F.Supp.3d ---, 2020 WL 5525171, *4  (N.D. Cal. Sept. 14, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, --- F. Supp. 3d ---, 2020 WL 5938689, at *3-5 (C.D. Cal. Oct. 2, 2020); *Seifert v. IMT Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 6120002, *3 (D. Minn. Oct. 16, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, --- F. Supp. 3d ---, 2020 WL 6163142, *6-8 (S.D. Ala. Oct. 21, 2020); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, --- F.

5

Supp. 3d ---, 2020 WL 6503405, *5-8 (S.D. Miss. Nov. 4, 2020); *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 6562332, at *5-7 (N.D. Cal. Nov. 9, 2020); *Palmer Holdings & Investments, Inc. v. Integrity Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 7258857, *8-11 (S.D. Iowa Dec. 7, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co.*, --- F. Supp. 3d ---, 2020 WL 7321405, *6-11 (S.D.N.Y. Dec. 11, 2020) ("nearly every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property.")

As the court in *Mudpie* explained, the terms "direct physical loss of . . . property" requires either a physical change in the condition of the property or a permanent dispossession.  2020 WL 5525171, at *4.  Mudpie could regain possession of its storefront when the Stay-at-Home Orders are lifted, and neither it's physical storefront nor inventory had been "misplaced" or become "unrecoverable."  Therefore, the court concluded that it had not suffered a direct physical loss of property.  *Id*.  The court noted that surrounding provisions in the insurance policy confirmed this interpretation.  *Id*. (citing *Sony Comput. Entertain. Amer. Inc. v. Amer. Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) ("The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other.")):

> The insurance policy states that the "period of restoration" – applicable to both Business Income and Extra Expense coverage – "[b]egins 24 hours after the time of direct physical loss or damage" and "[e]nds on the date when the property . . . should be repaired, rebuilt or replaced with reasonable speed and similar quality." . . . . The words "'[r]ebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature." *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005).  But here, there is nothing to fix, replace, or even disinfect for Mudpie to regain occupancy of its property,

*Id*.; *see also Water Sports Kauai*, 2020 WL 6562332, at *6 (N.D. Cal. Nov. 9, 2020) ("The cases consistently conclude that there needs to be some *physical* tangible injury (like a total deprivation of property) to support "loss of property" or a *physical* alteration or active presence of a contaminant to support "damage to" property.") (emphasis in original); *Real Hospitality*, 2020 WL 6503405 (interpreting "loss of" prong in "direct physical loss of or damage to" to mean total dispossession of property); *Hillcrest Optical*, 2020 WL 6163142, *6-8 (temporary inability to use

1    property due to governmental intervention did not constitute a direct physical loss of property,

2    noting "there is a difference between a loss of physical possession and a loss of use").

3        As another court observed, the insured business did not suffer complete "direct physical

4    loss of" its property from the governmental order because "it always had complete access to the

5    premises even after the order was issued." *Mark's Engine*, 2020 WL 5938689, at *5.  While

6    perhaps customers could potentially claim "direct physical loss of" access to the premises,

7    customers were not the insured entity; the policy was between the business and the insurance

8    company, not the customers and the insurance company.  *Id.*

9        Other court have cautioned that interpreting "direct physical loss of property" to include

10   changes to what activities can physically occur in the space would be a "sweeping expansion of

11   insurance coverage without any manageable bounds." *Plan Check Downtown III, LLC v.*

12   *AmGuard Ins. Co.*, 2020 WL 5742712, at *6 (C.D. Cal. Sept. 10, 2020); *see also Mark's Engine*,

13   2020 WL 5938689, at *4 ("such an interpretation of any insurance policy would be without any

14   manageable bounds.").  The court in *Plan Check* provided different scenarios which would be

15   included if "physical loss" included mere changes in permitted physical activities:

16              (1) a city changes its maximum occupancy codes to lower the caps,
                meaning that a particular restaurant can no longer seat as many
17              customers as it used to; (2) a city amends an ordinance requiring
                restaurants located in residential zones to cease operations between
18              1:00 a.m. and 5:30 a.m. to expand the window to 12:00 a.m. to 6:00
                a.m.; (3) a city issues a mandatory evacuation order to all of its
19              residents due to nearby wildfires (a consequence of this is that all
                businesses must suspend operations), but lifts the order three weeks
20              later when the wildfires are extinguished without, fortunately, any
                destruction of property.
21
     2020 WL 5742712, at *6.
22
23       The Court finds these cases persuasive and similarly finds that direct physical loss of

24   property does not include the temporary loss of use due to the governmental Stay-at-Home Orders.

25   Notably, KBFA does not allege that it lost access to the properties, but merely that it was not

26   allowed to operate its business out of the properties.  *Mark's Engine*, 2020 WL 5938689, at *5

27   (finding insured business did not suffer complete "direct physical loss of" its property because "it

28   always had complete access to the premises even after the order was issued.").

United States District Court
Northern District of California

1   The Court is further persuaded by the language in the business income provision providing

2   that business income is covered for the "period of restoration." (Dkt. No. 17-1 at p. 59.) The

3   Policy defines "period of restoration" as beginning on the date of direct physical loss and ending

4   when the property "should be repaired, rebuilt or replaced . . ." (*Id.*, at p. 73.) There are no

5   repairs or replacements needed to be made here. KBFA can continue operating its business as

6   soon as the Stay-at-Home Orders are lifted. Interpreting direct physical loss of property to include

7   KBFA's loss of use would rending the language "period of restoration" meaningless.

8   KBFA's authority does not assist it. In *American Alternative Insurance Corporation v.*

9   *Superior Court*, the court interpreted the phrase "direct and accidental loss" of an aircraft to

10   include governmental seizure or confiscation. 135 Cal. App. 4th 1239, 1246-47 (2006). The court

11   noted that the insurance company presumably construed the policy language to cover that incident

12   because the policy had contained an explicit exclusion precluding such coverage but the insured

13   purchased an endorsement expressly deleting that exclusion. *Id.* In fact, the court determined that

14   the scope of coverage was not actually in dispute because the insurer appeared to agree. *Id.* at

15   1247. In addition to the different policy language and dispute at issue, the plaintiff lost actual

16   possession of and access to the aircraft during the confiscation. Therefore, *American Alternative*

17   *Insurance* is inapplicable.

18   KBFA also relies on *Hughes v. Potomac Ins. Co. of D.C.*, 199 Cal. App. 2d 239 (1962). In

19   *Hughes*, soil underneath the house slid away and left the house overhanging on a thirty-foot cliff.

20   The insurer argued that the "dwelling building" was not damaged because the paint and walls were

21   intact, even though the building was not fit to live in. The court rejected that argument and

22   interpreted "dwelling building" to include the underlying land so that the policy would not be

23   illusionary. *Id.* at 248-49. It is not clear how this case supports KBFA's position. KBFA argues

24   that *American Alternative Insurance* and *Hughes* demonstrate that KBFA's buildings could not be

25   considered retail locations if customers cannot access the stores, but whether KBFA's art galleries

26   are "retail locations" is not in dispute.

27   KBFA also cites to *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385, at *6 (W.D.

28   Mo. Aug. 12, 2020), which held that the plaintiffs adequately alleged a direct physical loss when

United States District Court
Northern District of California

they stated that "COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable." *See also Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 2020 WL 5637963, at *4 (W.D. Mo. Sept. 21, 2020) (finding allegations that customers and employees were likely infected with the virus and that plaintiff "suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there" was sufficient to allege damage to its property).[1]  KBFA, in contrast, has not alleged that COVID-19 has actually damaged its property. Instead, KBFA alleges that the local governments ordered that non-essential businesses shut down to prevent the spread of COVID-19 to *people.  See Mudpie*, 2020 WL 5525171, at *6 (distinguishing *Studio 417* because plaintiff did not allege "the presence of the COVID-19 virus in its store created a physical loss.  Rather, its sole focus is on the shelter-in-place orders that have prevented it from opening, a distinctly less physical phenomenon."); *Real Hosp.*, 2020 WL 6503405, at *7 n. 12 (distinguishing *Studio 417* because plaintiff did not allege that the virus was present on the restaurant premises, but instead that it was forced to close its premises as a direct result of the governmental orders); *Pappy's I*, 2020 WL 5500221, at *5 n. 2 (same); *Michael Cetta*, 2020 WL 7321405, at *10-11 (same).

Even if KBFA had included allegations regarding the virus being present on and damaging the property, they would not be plausible.  *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, --- F. Supp. 3d ---, 2020 WL 5847570, at *1 (S.D. Ca. Oct. 1, 2020) ("*Pappy's II*") (even assuming presence of virus at plaintiffs' business premises, business income losses were caused by precautionary measures taken by the state to prevent the spread of COVID-19 rather than by direct physical loss of or damage to property); *Uncork & Create LLC v. Cincinnati Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence

---

[1] KBFA also cites to *North State Deli, LLC v. The Cincinnati Ins. Co.*, 2020 WL 6281507, at *3 (N.C. Super. Oct. 09, 2020), which held, without much analysis that the plaintiff's loss of use and loss of access to the property by the government decree constituted "direct physical loss." Due to its lack of analysis and the vast majority of courts contradicting this finding, the Court finds *North State Deli* is not persuasive.

1    on surfaces can be eliminated with disinfectant."); *Terry Black's Barbecue, LLC v. State Auto.*

2    *Mut. Ins. Co.*, 2020 WL 7351246, at *7 (W.D. Tex. Dec. 14, 2020) (same).  The virus COVID-19

3    harms people, not property.  *Uncork & Create*, 2020 WL 6436948, at *5 ("In short, the pandemic

4    impacts human health and human behavior, not physical structures.").

5          Lastly KBFA cites to cases which have determined "physical damage" to include

6    microscopic material.  (Dkt. No. 35 at pp. 20-21.)  However, as discussed above, KBFA does not,

7    and could not plausibly, allege that its properties have been physically damaged by the virus

8    causing its business losses.  Instead, KBFA alleges that the government shut down orders to

9    prevent the spread of COVID-19 to people caused its business losses.

10         Therefore, the Court finds that KBFA has not, and cannot allege direct physical loss of

11   property as required under the Policy to recover business income or extended business income.

12         **2.       Civil Authority.**

13         The Policy also provides coverage for loss of business income sustained when "access to

14   your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result

15   of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'"

16   (Dkt. No. 17-1 at p. 60.)  The Policy defines covered causes of loss as risks of direct physical loss

17   which are not excluded or limited.  (Dkt. No. 17-1 at p. 51.)  Sentinel argues that KBFA's claims

18   under this provision fail because coverage is precluded by the "virus endorsement" and because

19   KBFA has not, and cannot, allege risk of direct physical loss to property in the immediate area of

20   KBFA's galleries.  The Court finds that KBFA does not allege, and could not allege for the

21   reasons discussed above, that there has a been a risk of direct physical loss to *property* in the

22   immediate area of KBFA's premises due to COVID-19 or that the government Stay-at-Home

23   Orders were issued as a direct result of such loss to *property*.  Instead, the Stay-at-Home Orders

24   were issued to prevent the spread of COVID-19 to *people*.  *See Mudpie*, 2020 WL 5525171, at *7

25   (finding no coverage under civil authority provision because government closure orders were

26   intended to prevent the spread of COVID-19 and thus plaintiff failed to establish requisite causal

27   link between damage to adjacent property and denial of access to its store); *Pappy's II*, 2020 WL

28   5847570, at *1 (civil authority provision did not apply because orders were precautionary

United States District Court
Northern District of California

10

1    measures taken to prevent the spread of COVID-19 and not issued as a result of loss or damage to

2    property); *Mortar and Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180, at *5 (N.D.

3    Cal. Dec. 21, 2020) (finding it was "apparent from the plain language of the cited civil authority

4    orders that such directives were issued to stop the spread of COVID-19 and not as a result of any

5    physical loss of or damage to property").  Again, because the Court finds that KBFA has not, and

6    cannot, allege direct physical loss to property in the immediate area, or that the Stay-at-Home

7    Orders were issued to as a result of direct physical loss to property in the immediate area, the

8    Court need not address the scope of the "virus endorsement."

9           **3.    Sue and Labor Coverage.**

10          The Policy imposes certain obligations on KBFA in the event that there is loss or damage

11   to covered property, which the parties refer to as "sue and labor" coverage.  (Dkt. No. 17-1 at p.

12   69.)  However, because the Court finds that KBFA has not, and cannot, allege direct physical loss

13   of its property or direct physical loss to property in the immediate area, this Policy provision is

14   inapplicable.  *See Promotional Headwear International v. The Cincinnati Insurance Company*,

15   2020 WL 7078735, at *10 (D. Kan. Dec. 3, 2020) (finding that sue and labor provision was

16   inapplicable where there was no coverage under the policy); *Ballas Nails & Spa, LLC v. Travelers

17   Casualty Ins. Co. of Amer.*, 2021 WL 37984, at *3 (E.D. Mo. Jan. 5, 2021) ("because expenses are

18   reimbursable under the Sue and Labor clause only in the settlement of an already-covered claim,

19   the clause does not apply here since Ballas does not have a covered claim").

20                              **CONCLUSION**

21          For the foregoing reasons, the Court GRANTS Sentinel's motion for judgment on the

22   pleadings.  The Court will not provide leave to amend because, in light of KBFA's allegations

23   regarding COVID-19 and the Policy provisions regarding direct physical loss of property, doing

24   so would be futile.  While the Court is sympathetic to the situation facing KBFA and other

25   businesses, KBFA could not plausibly allege that its premises, or that nearby properties, have been

26   physically damaged or lost due to COVID-19 or the Stay-at-Home Orders.  Accordingly, the

27   Court dismisses KBFA's claims with prejudice.

28   / / /

United States District Court
Northern District of California

1      The Court will issue a separate judgment.  The Clerk shall close the file.

2      **IT IS SO ORDERED**.

3   Dated: January 13, 2021

4   
    _____

5   SALLIE KIM
    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California